PHYFER FURNITURE COMPANY, et al. *v.* PHYFER

No. 42121        February 5, 1962        137 So. 2d 186

*McCraine & Fox,* Houston, for appellants.

*A. M. Edwards, Jr., Lenore L. Prather,* West Point, for appellee.

ARRINGTON, J.

Phyfer Furniture Company and its insurance carrier appeal from a judgment of the Circuit Court of Clay County reversing the decision of the Workmen's Compensation Commission and reinstating the order of the attorney-referee.

H. H. Phyfer, who will be hereinafter referred to as claimant, sustained an injury to his back while in the discharge of his duties for Phyfer Furniture Company, a partnership, at West Point, Mississippi, and sought to obtain workmen's compensation benefits. At the first hearing the issue was limited to the question of whether claimant was covered under the insurance policy in question. The attorney-referee, in his opinion on February 19, 1960, held that the proper premium was paid on the salary of claimant, both as an employee before becoming a partner and as a partner after he entered that status, and that it was the intention of the partners that claimant was to be covered, although no request was made for him to be covered by endorsement on the various policies. After holding that the claimant was covered under the policy in question, he ordered the claim reset for hearing on the merits as to the extent of disability.

On review by the full commission, the attorney-referee's order was affirmed. An appeal to the circuit court was dismissed. Thereafter on September 19, 1960, there was a hearing on the merits. It was stipulated that the claimant sustained an injury at 11 o'clock A.M. on January 26, 1959; that it arose out of and in the course of his employment as a partner of the Phyfer Furniture Company; and that the drawing account for claimant was $5,200 per year. It was further stipulated that he sustained a fifteen percent permanent loss of wage earning capacity to the body as a whole and sustained ten weeks' total disability benefits based on the maximum, and $1056.50 in medical expenses. The insurance policy effective January 26, 1958 and expiring January 26, 1959, and the renewal which went into effect January 26, 1959 at 12:01 A.M., were introduced in evidence.

On October 17, 1960, the attorney-referee held that the claimant was covered and awarded benefits in accordance with the stipulation above. On April 27, 1961, the Commission, by a vote of two to one, with both ma-

jority and minority opinions, reversed the order of the attorney-referee and denied compensation benefits.

As heretofore stated, on appeal to the circuit court the order of the Commission was reversed and the order of the attorney-referee reinstated.

The question in this case is: If an insurance company receives the proper premium on the salary of a partner in the business with knowledge at the time of the status of the partner, may it, subsequent to the occurrence of a compensable injury to the partner, escape liability for workmen's compensation coverage because no endorsement to that effect had been placed on the policy?

Phyfer Furniture Company was a partnership. It was composed of Mr. and Mrs. H. B. Phyfer, with stores at New Albany and West Point, and carried workmen's compensation coverage on both. The claimant, H. H. Phyfer, a nephew, first became connected with the business as an employee in the store at West Point. Subsequently, in 1953, he became a partner in the business at New Albany in which he listed the payroll and other expenses of the operated. Although he was a partner claimant was given a "draw", as it was called, which in fact was his salary. That amount was included in the payroll. The New Albany office combined the payroll of that store with the payroll of the West Point store, which included claimant's salary, and paid to the insurance carrier from year to year the proper amount of premium for workmen's compensation insurance. The appellant insurance company was the carrier of coverage from the passage of the workmen's Compensation act, and policies of renewal were issued from year to year. Audits were made by the insurance carrier from time to time. All records of the partnership were available to the auditors and they showed that the claimant was a partner in the West Point operation. In some of these audits, the auditors listed him as a partner. By the payment of the premium on the salary of

claimant, both he and Mrs. H. B. Phyfer, the book-keeper, intended for him to have workmen's compensation coverage, and thought they were effecting such a result. At no time did the insurance carrier refund any part of the premiums so paid from year to year over the entire period.

The renewal policy for the year 1959 had gone into effect at 12:01 A.M. on January 26 and the injury was suffered eleven hours later. The premium on the estimated payroll for 1959, which included claimant's salary, was paid promptly. After the claim arose on account of the injury, the insurance carrier, on its own account, made a re-audit, and because there was no endorsement on the policy that it covered claimant as a partner, the carrier took the position that it had erroneously picked up the coverage on a partner who had not elected to be covered, saying that unless this was shown on the policy such partner was not covered. For that reason it tendered a refund to the local agent of the alleged excess premium collection. The Phyfers did not request the re-audit.

The insurance carrier did not offer to make refunds for the preceding years; and the refund, offered for the year 1959, was not tendered until June 1959.

The claimant and Mrs. H. B. Phyfer both testified that the premium on the salary of claimant had been paid while he was an employee and ever since he has been a partner, and the insurance carrier offered no substantial evidence to show that this had been done. On the contrary, it said that the auditor can waive his right to make a detailed audit, and, in lieu thereof, take the lump sum figures. It further admitted that a partner doing the same work as a manager would pay a premium at a like rate. In other words, there was no added premium merely because of the insured being a partner and there was no claim that there was any change in the nature of the work after he became a partner.

Suffice it to say, the overwhelming weight of the evidence was to the following effect: For the whole period of time that claimant was connected with the Phyfer Furniture Company, both as an employee and as a partner, the premium was paid on his salary for workmen's compensation benefits. Both he and Mrs. H. B. Phyfer, who transmitted the premiums, intended for him to be covered and thought he was covered. The entire records were available to the insurance carrier and it was obvious from them that the claimant was a partner. Besides, in certain instances, the audit showed that he was a partner. The auditors accepted the lump sum figures and these included the salary of claimant. For approximately six years the insurance carrier accepted premiums on the salary of claimant and at no time during that period did it ever offer to refund the premium which it had collected on the salary of claimant. After the claims department was faced with a claim on account of his injury, only then did the insurance carrier on its own account made a re-audit and then it was nearly six months later that it claimed it had erroneously collected premiums on claimant's salary and it wished to make a refund therefor and be relieved of coverage on such injury.

In the Workmen's Compensation Act, as originally enacted, Section 6998-40, Code of 1942, Recompiled, it is provided: "Acceptance of a premium on a policy securing to an employee compensation, either alone or in connection with other insurance, shall estop the carrier so accepting from pleading that the employment of such employee is not covered under the act or that the employment is not carried on for pecuniary gain."

This section was amended by Section 14, Chapter 412, Laws of 1950, as follows: "When any member of a partnership, firm, or association, or officer of a corporation, who does or does not perform manual labor, and

where there is coverage of fellow employees, elects to take coverage under the provisions of the act, the intent of the insured as well as acceptance by the carrier shall be shown by endorsement to the policy. Any such affirmative action by the parties shall entitle said members or officers to the benefits enjoyed by an employee under the act.''

In the case of Badon Refrigeration Co., et al v. Badon, 231 Miss. 113, 95 So.2d 114, M. E. Badon was a stockholder and secretary of the corporation. He had no duties as an executive of the corporation; his entire time was spent as a salesman for the corporation. He drew a salary of $120 per week. The carrier charged and collected a premium on his salary. The main defense of the carrier in this case was that Badon's name was not endorsed on the policy. The Court said:

''We therefore hold that it was the manifest intention of the legislature to broaden the coverage of the act and not to narrow it, and that it would be unfair, unjust, and inequitable to permit the carrier to collect premiums on Mr. Badon's salary and then seek to avoid liability for compensation for his death simply because his name was not specifically written in the policy or endorsed thereon.''

This case was decided May 6, 1957, after the amendment of the act in 1950, supra. We are of the opinion that the Badon case is controlling here, and it follows that the judgment of the circuit court is affirmed.

Affirmed.

*Lee, P. J.,* and *McElroy, Rodgers* and *Jones, JJ.,* concur.