511 So.2d 924 (1987)
CHAMPION CABLE CONSTRUCTION COMPANY, INC., and United States Fidelity & Guaranty Company
v.
Turner MONTS.
No. 57010.
Supreme Court of Mississippi.
August 12, 1987.
Rehearing Denied September 16, 1987.
*925 Robert M. Carter, Sumners, Carter, Trout & McMillin, New Albany, for appellants.
Charles "Bo" Little, Pontotoc, for appellee.
Before ROY NOBLE LEE, P.J., and DAN M. LEE and GRIFFIN, JJ.
ROY NOBLE LEE, Presiding Justice, for the Court:
Champion Cable Construction Company, Inc., and United States Fidelity & Guaranty Company, carrier, appeal from a judgment entered by the Circuit Court of Pontotoc County, Mississippi, reversing the Mississippi Workers' Compensation Commission order denying compensation benefits to Turner Monts. The lower court adopted the finding and opinion of the administrative law judge and granted benefits to Monts. Champion assigns two (2) errors in the judgment below.
The appellant, Champion Cable Construction Company, Inc. [Champion] contracted with Byers Communication to run and rig cable systems at Ft. Myers Beach, Florida, and Miami, Florida. In November, 1982, Madison Rowzee, owner of Champion, contacted appellee, seeking help to complete the Ft. Myers Beach project on schedule. Appellee was experienced in laying and rigging cable, and, according to him, Rowzee needed two crews of three men each to lay approximately fifteen (15) to twenty (20) miles of cable in Ft. Myers Beach, Florida, and Rowzee and appellee orally agreed that appellee would be paid ten cents (10¢) per foot for strand or feeder cable laid, and twelve cents (12¢) per foot for trunk cable laid; that Monts would use the two trucks he owned for the job; and that Rowzee would supply any other equipment not owned but needed by appellee; and that Rowzee was to furnish general liability insurance coverage and workers' compensation coverage "on all the men."
Accordingly, Monts gathered the two crews, which included himself as one of the six members. It was his decision as to how the crew members would be paid, and he paid each crew member one and one-half cent (1 1/2¢) per foot of feeder and strand cable laid, and two cents (2¢) per foot for trunk cable laid. He was not given any travel allowance, nor was any federal tax or social security tax withheld from the payments made by Champion to him.
When appellee started the Ft. Myers project, a representative from Byers Communication inspected his crews' work daily and verified the footage of line laid each week. After verification, Champion would wire the payment to Monts in Ft. Myers Beach, Florida. Appellee had no company or company name under which he operated.
Rowzee testified for Champion that appellee had no workers' compensation insurance on his crew members and Rowzee agreed to provide such insurance. Further, that he could have terminated appellee should his work have failed to meet the required specifications on a continuing basis.
Bobby Fortner, one of appellee's crew members, was called as a witness and added that he worked for, and answered to, appellee and that appellee deducted the motel bill from his pay and disbursed the balance due to him each week.
While climbing a pole during work on the Ft. Myers Beach project on December 18, 1982, appellee fell eighteen (18) to twenty (20) feet injuring his back. Subsequently, surgery was performed on him in May and December of 1983 for a herniated disc. *926 Depositions from expert physicians indicated that appellee had not received maximum medical recovery at the time of the hearing below.
The administrative law judge found that appellee was an employee of Champion; that from September 6, 1983, until November 28, 1983, he was temporarily partially disabled and earned $200.00 per week; that prior to the injury, appellee earned an average weekly wage of $750.00; and that appellee was entitled to compensation in the amount of $112.00 per week for temporary partial disability.
On July 12, 1985, a majority of the Workers' Compensation Commission reversed the administrative law judge's order, and found that appellee was a subcontractor and not an employee of Champion. On appeal, the Circuit Court of Pontotoc County reversed the Commission's order and adopted the dissent of the third Commission member, finding appellee to be an employee of Champion entitled to workers' compensation benefits. Thus, the appeal to this Court.
I. THE LOWER COURT ERRED IN FAILING TO APPLY THE SUBSTANTIAL EVIDENCE TEST IN ITS REVIEW OF THE DECISION OF THE MISSISSIPPI WORKERS' COMPENSATION COMMISSION.
II. THE LOWER COURT ERRED IN REVERSING THE FINDING OF THE MISSISSIPPI WORKERS' COMPENSATION COMMISSION WHICH FOUND THAT TURNER MONTS WAS A SUBCONTRACTOR AND NOT AN EMPLOYEE OF CHAMPTION CABLE CONSTRUCTION CO., INC.
The two assigned errors are related and will be discussed together.
The position of appellee Turner Monts in this case is that he was an employee of Champion, and as such, was covered for workers' compensation insurance by Champion. The position of Champion is that appellee was a subcontractor or independent contractor, that as such, Champion agreed to carry workers' compensation coverage on his employees only.
The administrative law judge found that appellant and appellee entered into an agreement that appellee would provide Champion with a crew of men for the purpose of installing the cable for a television system at Ft. Myers Beach, Florida; that Rowzee, owner of Champion, went to Ft. Myers Beach from Miami to inspect the work done by appellee and his crew of men; that appellee was paid by check from appellant periodically based upon the number of feet of cable which claimant and his crew laid; that appellee provided most of the equipment which he and his crew used, but that appellant provided some of the equipment; that Champion had the right to fire the claimant; and that appellee was an employee of appellant.
The Commission majority found that appellee owned his own equipment, hired his own crews, negotiated a pay scale with his workers and ultimately made a profit from their labor; that Champion/Rowzee's statement that he was not aware appellee intended to lash the cable himself indicates he contracted for the performance of a job and not for claimant's personal services; and that appellant was a subcontractor and thereby excluded from coverage under the Workers' Compensation Act. The Commission further found that Champion is not liable for the payment of compensation to appellee because the latter was a subcontractor and thereby able to absorb his own loss.
The dissenting opinion of one Commissioner agreed with the majority that the issue in the case is whether or not appellee should be classified as an employee or as an independent contractor. The majority opinion of the Commission concluded that appellee was an independent contractor, and the dissenting Commissioner was of the opinion that appellee was an employee of Champion.
In Georgia-Pacific Corp. v. Crosby, 393 So.2d 1348 (Miss. 1981), the Court emphasized the control test in a subcontractor relationship as being of primary importance. The Court said:

*927 Relevant characteristics are usually listed, with all except the control test being considered merely indicia pointing one way or the other... . It is the ultimate right of control, not the overt exercise of that right, which is decisive. Probably the four principal factors under the control test, are (1) direct evidence of right or exercise of control; (2) method of payment; (3) the furnishing of equipment; and (4) the right to fire.

Georgia-Pacific Corp., 393 So.2d at 1349, citing Boyd, 250 Miss. 433, at 440, 166 So.2d 106, at 108 (1964).
The Court further indicated that "The modern tendency is to find employment when the work being done is an integral part of the regular business of the employer, and when the worker relevant to the employer does not furnish an independent business or professional service." 393 So.2d at 1350, citing 1A Larson, Workmen's Compensation Law, § 49 (1979).
We have held from the inception of the Workers' Compensation Law that the Workers' Compensation Commission is the trier and finder of facts in a compensation claim, the finding of the administrative law to the contrary, notwithstanding. If the Commission's finding of fact and order is supported by substantial evidence, then the appellate courts are bound by such finding and order. Marshall Durbin, Inc. v. Hall, 490 So.2d 877, 879 (Miss. 1986); Penrod Drilling Co. v. Etheridge, 487 So.2d 1330 (Miss. 1986); King & Heath Construction Co. v. Hester, 360 So.2d 692 (Miss. 1978).
Appellee argues that the question of whether or not he was an independent contractor or employee is one of law and not of fact. That argument is misplaced. The law applies to the facts to determine whether or not appellee here was a subcontractor or employee. Boyd v. Crosby Lumber & Mfg. Co., 250 Miss. 433, 166 So.2d 106 (1964); Wade v. Traxler Gravel Co., 232 Miss. 592, 100 So.2d 103 (1958).
The facts of this case have been stated briefly hereinabove. We are of the opinion that the facts are in substantial support of the Commission's finding and order that appellee was a subcontractor and not an employee of appellant.
In holding that the appellee was not an employee but a subcontractor, the Commission concluded that appellee was not entitled to medical and disability benefits. The Commission and the parties left unaddressed and unanswered the crucial question of appellee's position under the facts of this claim in the light of Mississippi Code Annotated § 71-3-7 (1972), which provides in pertinent part that:
Every employer to whom this chapter applies shall be liable for and shall secure the payment to his employees of the compensation payable under its provisions.
In the case of an employer who is a subcontractor, the contractor shall be liable for and shall secure the payment of such compensation to employees of the subcontractor, unless the subcontractor has secured such payment.
Mississippi Code Annotated § 71-3-79 (1972) provides, in pertinent part, the manner in which a person in an executive capacity or position of authority may qualify for compensation benefits:
When any member of a partnership, firm, or association who does or does not perform manual labor, and where there is coverage of fellow employees, elects to take coverage under the provisions of the chapter, the intent of the insured as well as acceptance by the carrier shall be shown by endorsement to the policy. Any such affirmative action by the parties shall entitle said members or officers to the benefits enjoyed by an employee under the chapter. Every executive officer elected or appointed and empowered in accordance with a charter and bylaws of a corporation, other than nonprofit charitable, fraternal, cultural, or religious corporations or associations, shall be an employee of such corporation under this chapter, provided that said executive officer may reject said coverage by giving notice in writing to the carrier of this election not to be covered as an employee.
*928 Mr. Rowzee, owner of Champion, testified that he was of the opinion he was supplying compensation insurance for the Ft. Myers Beach job. In its finding of fact, the Commission set out:
Claimant testified Mr. Rowzee agreed to furnish workmen's compensation insurance, however Mr. Rowzee testified he agreed to secure coverage for claimant's crew members. Mr. Rowzee was aware claimant did not have insurance and that Champion, as a statutory employer, would thereby be liable for injuries to claimant's crew members.
The evidence is uncontradicted that in order for appellee to perform the job assigned to him by appellant, two crews composed of three workers each would be required. Appellant knew that the men working on appellee's job totalled six, although he may not have known that appellee was one of the crew members. Rowzee testified that he was covering all the crew members. The job of lineman, which was filled by appellee, was essential to the operation of a crew and, without the lineman, the crew could not have functioned. The logical conclusion follows that, since Rowzee knew the subcontract was being performed by six workmen and that he had agreed to provide workers' compensation coverage for them, the six workers under the subcontract were covered by compensation insurance.
In Tallco, Inc. v. Queenan, 253 Miss. 709, 178 So.2d 665 (1965), James P. Queenan was awarded workers' compensation. He was employed by Tallco, Inc. at seventy-five dollars ($75.00) per week as a working foreman. He was also a stockholder, director and vice president of Tallco, Inc. Workers' compensation insurance premiums were paid on the employees of Tallco, including Queenan. He was injured while working on the job and the insurance carrier attempted to refund the premium which was paid on Queenan, and denied the claim.
The Court held that Mississippi Code Annotated § 6998-40 (1952) applied. The section, now codified as Mississippi Code Annotated § 71-3-79 (1972), follows:
Acceptance of a premium on a policy securing to an employee compensation, either alone or in connection with other insurance, shall estop the carrier so accepting from pleading that the employment of such employee is not covered under the act or that the employment is not carried on for pecuniary gain.
When any member of a partnership, firm or association, or officer of a corporation, who does or does not perform manual labor, and where there is coverage of fellow employees, elects to take coverage under the provisions of the act, the intent of the insured as well as acceptance by the carrier shall be shown by endorsement to the policy. Any such affirmative action by the parties shall entitle said members or officers to the benefits enjoyed by an employee under the act.
253 Miss. at 712-13, 178 So.2d at 666.
The Court, in affirming the award by the Workers' Compensation Commission, said:
We are of the opinion that appellant is estopped to plead the alleged ineligibility of the workman to recover benefits under the facts and circumstances shown by the record in this case. The judgment of the circuit court affirming the award to appellant by the Workmen's Compensation Commission is therefore affirmed.
253 Miss. at 715, 178 So.2d at 667.
The law is elementary that the Workers' Compensation Act is to be construed liberally. Mississippi Code Annotated § 71-3-1 (Supp. 1986); Barham v. Klumb Forest Products Center, Inc., 453 So.2d 1300 (Miss. 1984); Pontotoc Wire Products Co. v. Ferguson, 384 So.2d 601 (Miss. 1980); Dixie Contractors, Inc. v. Ashmore, 349 So.2d 532 (Miss. 1977); L.B. Priester & Son, Inc. v. Bynum's Dependents, 244 Miss. 185, 142 So.2d 30 (1962) (on Suggestion of Error); Est. of Stovall v. A. Deweese Lbr. Co., 222 Miss. 833, 840, 77 So.2d 291, 294 (1955).
We distinguish American Surety Co. v. Cooper, 222 Miss. 429, 76 So.2d 254 (1954), from the present case. There, the working partner knew, prior to his injury, that he was not included in workmen's compensation *929 coverage, and he had not been misled with reference thereto by any conduct of the compensation carrier. His claim was held not to be compensable. Under the facts of the case sub judice, we are of the opinion that appellant is estopped to deny compensation coverage on appellee and, although the lower court arrived at the right result for the wrong reasons, the judgment of the lower court must be affirmed.
AFFIRMED AND REMANDED TO THE WORKERS' COMPENSATION COMMISSION.
WALKER, C.J., HAWKINS, P.J., and DAN M. LEE, PRATHER, ROBERTSON, SULLIVAN, ANDERSON and GRIFFIN, JJ., concur.