# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2018-WC-01659-COA

**SHEREE CLEVELAND**                                                 **APPELLANT**

**v.**

**ADVANCE AUTO PARTS AND INDEMNITY**                  **APPELLEES**
**INSURANCE COMPANY OF NORTH AMERICA**

| | |
|---|---|
| DATE OF JUDGMENT: | 11/06/2018 |
| TRIBUNAL FROM WHICH APPEALED: | MISSISSIPPI WORKERS' COMPENSATION COMMISSION |
| ATTORNEYS FOR APPELLANT: | DAVID N. GILLIS |
| | JAMES E. LEVER |
| ATTORNEYS FOR APPELLEES: | DANIEL PAUL CULPEPPER |
| | MATTHEW RYAN ANTHONY |
| NATURE OF THE CASE: | CIVIL - WORKERS' COMPENSATION |
| DISPOSITION: | REVERSED AND REMANDED - 12/10/2019 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**McDONALD, J., FOR THE COURT:**

¶1.     This appeal arises from a workers' compensation dispute. Sheree Cleveland filed post-settlement motions for relief[1] before the Mississippi Workers' Compensation Commission (the Commission) against Advance Auto Parts and Indemnity Insurance Company of North America (collectively Employer/Carrier) in an effort to get the Employer/Carrier to pay two of Cleveland's outstanding medical bills. These bills were

---

[1] These were combined in a "Motion for Certification of the Facts to the Circuit Court for Punishment for Contempt, Motion for Reasonable Expenses, Including Attorney's Fees, and Motion for Levy of Civil Penalty."

incurred, and all parties were aware that they existed prior to the order approving a "Final Compromise and Settlement" (settlement agreement) and the filing of the Form B-31. Cleveland sought payment from the Employer/Carrier twice within the next year, but Cleveland filed her post-settlement motions with the Commission after the one-year period outlined in Mississippi Code Annotated section 71-3-53 (Rev. 2011). In response to the post-settlement motions, the Employer/Carrier filed a response, arguing that the Commission did not have authority to rule because it lacked jurisdiction.

¶2.     The administrative judge (AJ) heard the motions on April 16, 2018, and granted Cleveland relief, but after an appeal by the Employer/Carrier, the Commission vacated the AJ's order on statute-of-limitations grounds.

¶3.     On Cleveland's appeal to this Court, we find that the Commission erred, and we reverse its decision for two reasons. First, the Employer/Carrier is estopped from asserting the statute-of-limitations defense because it knew of and previously agreed to pay Cleveland's outstanding bills and because it represented to the AJ that it was processing one bill and had paid the other bill. Second, although the Form B-31 was properly filed, Cleveland's contact with the Employer/Carrier sufficiently tolled any statutory limitations period that may be applicable. We remand for the reinstatement and enforcement of the AJ's order.

**FACTS AND PROCEDURAL HISTORY**

¶4.     On November 25, 2014, Cleveland sustained an injury to her lower back while unloading freight during her employment with Advance Auto Parts in Hazlehurst,

2

Mississippi. The following day, Cleveland sought medical attention and was prescribed medication and physical therapy. During this time, she accrued a bill at Allreds' Pharmacy. On February 3, 2015, Cleveland filed a petition to controvert with the Mississippi Workers' Compensation Commission regarding her injury.

¶5. Cleveland returned to work and sustained a second injury to her lower back on March 23, 2015. Cleveland sought medical attention following this second injury. Subsequently, she underwent additional physical therapy in April and May 2015.

¶6. On October 19, 2015, Cleveland filed a petition to controvert regarding the second injury. At Cleveland's request, the claims were consolidated by the Commission. Advance Auto Parts' insurance carrier, Indemnity Insurance Company of North America, was granted leave to intervene.

¶7. The Employer/Carrier had received notice of Cleveland's Allreds' Pharmacy bill on April 14, 2015, when she responded to the Employer/Carrier's first set of requests for production of documents for the first injury.[2] On March 14, 2016, Cleveland filed a pre-hearing statement with the Commission and attached an itemization of her medical expenses including both the pharmacy and physical therapy bills. The Employer/Carrier never denied the legitimacy of these bills, and the parties settled.

¶8. On August 17, 2016, Cleveland and the Employer/Carrier filed a "Petition for Approval of Final Compromise Settlement" with the Commission. On the same day, the Commission entered an order, finding that Cleveland and the Employer/Carrier "ha[d]

_____

[2] Cleveland included an itemization of the medical expenses that she had incurred at the time of the first injury.

3

negotiated a compromise settlement of all claims arising out of the Claimant's alleged injuries for which compensation is being made herein and that the parties have reached a full and final statement of all claims . . . ." The Commission further found that the Employer/Carrier

> has paid for or **will pay** for the necessary and reasonable medical expenses incurred by Claimant related to [her] injuries for which claim is being made herein which [were] incurred before the date of the Petition for Approval of Final Compromise Settlement and [provided that] those expenses are covered charges as contemplated by Miss. Code Ann. § 71-3-15 (1972) and Mississippi Workers' Compensation Commission General Rule 9.

(Emphasis added). The Employer/Carrier filed the Form B-31 with the Commission on September 12, 2016.

¶9. Within the one-year deadline imposed by Mississippi Code Annotated section 71-3-53, Cleveland's attorney contacted the Employer/Carrier's attorney and requested payment of Cleveland's outstanding bills on two occasions. On November 30, 2016, Cleveland's attorney sent an email to the Employer/Carrier's attorney requesting that the Employer/Carrier pay the Allreds' Pharmacy bill in the amount of $1,099.09. The Employer/Carrier did not respond to this email. Cleveland's attorney then sent a letter to the Employer/Carrier's attorney, enclosing copies of the outstanding Medicomp physical therapy and Allreds' Pharmacy bills on July 13, 2017.[3] The letter stated as follows:

> Enclosed please find copies of the following unpaid medical and pharmaceutical bills concerning the captioned matters:

> 1) Billing statements (4 pages) from Copiah Wellness & Rehab/

---

[3] Cleveland incurred both bills, and the Employer/Carrier had notice of both bills, before the settlement agreement was approved.

4

> Medicomp Physical therapy for service dates April 30, 2015; and, May 5, 7 & 11, 2015.
>
> 2) Billing Log printed (7/12/2017 from Medicomp Physical Therapy (1 page)) showing the balances due after adjustments and indicating that no payments have been made.
>
> 3) Itemized billing statement from Allreds['] Pharmacy (2 pages) showing a balance due of $1,099.99.
>
> As you know, the workers' compensation carrier is responsible for the payment of Sheree Cleveland's medical expenses pursuant to the settlement agreement reached in the captioned causes and pursuant to the order rendered in these causes.
>
> By email dated 11/30/2016, I forwarded notice to you concerning the non-payment of the pharmacy bill, but I never received a response from you. Request is hereby made that these medical expenses be paid immediately. I further request that you contact me upon receipt of this letter and advise the reason for non-payment of these bills and provide assurance that these bills will be paid at this time.

The Employer/Carrier did not respond to the letter.

¶10. On March 30, 2018, Cleveland filed her post-settlement motions with the Commission, seeking payment of these outstanding bills and requesting attorney's fees. On April 16, 2018, the AJ held a hearing on Cleveland's post-settlement motions. At the hearing, the Employer/Carrier represented to the AJ that its adjuster was processing the outstanding Medicomp physical-therapy bill and the Allreds' Pharmacy bill. In addition, on April 23, 2018, the Employer/Carrier's attorney sent an email to the AJ and stated in relevant part:

> As you requested, I wanted to provide you with an update on the status of the medical bills that we discussed last Monday. . . .
>
> As for the Medicomp bills that were provided, those were processed per the

5

Fee Schedule by Genex and payment was issued on April 18, 2018. . . .

As for the [Allreds'] [P]harmacy bills, I am working to confirm the delay in payment from the adjuster. That being said, I know that a Tax ID was needed from the pharmacy to complete the processing of their charge. I am attempting to determine where in the process that was after I left for the conference. I know that I currently have the Tax ID and as of today, I have provided it to my client. It is my understanding that my client had previously requested that information, but I have not been able to confirm whether they were successful.

I will have a follow-up email for you tomorrow as soon as I have specific information about the pharmacy bill and the processing of it. . . .

¶11. Since the Employer/Carrier paid one outstanding bill[4] and represented that it was processing the other, the AJ needed only to decide the issue of attorney's fees.[5] On June 5, 2018, the AJ issued an order stating in pertinent part:

At the hearing, the Employer/Carrier explained that the adjuster was processing the bills. Therefore, Claimant agreed to hold the motion in abeyance except for the request for attorney fees. After considering arguments of counsel, Claimant's motion, the Employer/Carrier's response, and the parts of the Commission file which comprise the record pursuant to MWCC Procedural Rule 2.10, I find that Claimant's request for attorney fees should be granted. Claimant's attorney is hereby ordered to provide a statement of his fees and expenses with regard to the work associated with the motion to the undersigned within thirty (30) days of the date of this order. The Employer/Carrier will then have 15 days to respond to the amount of the fees.

The AJ held the issue of the payment of outstanding medical bills in abeyance and found that Cleveland was entitled to attorney's fees.

¶12. On June 25, 2018, the Employer/Carrier filed a petition with the Commission for a review of the AJ's findings. The Employer/Carrier argued that the AJ "erred when she failed

[4] The email stated that the Employer/Carrier paid the Medicomp physical-therapy bill.

[5] That issue is not before this Court at this time.

6

to deny the Claimant's motion due to a lack of jurisdiction . . . ." It claimed that the statute-of-limitations period had run on Cleveland's request for benefits.

¶13. In an order dated November 6, 2018, the Commission found that Cleveland "made no application for additional benefits to the Commission within the Commission's one-year continuing jurisdiction of this claim," and, therefore, the Commission reversed the AJ's order for lack of jurisdiction.

¶14. On November 19, 2018, Cleveland timely filed her appeal to this Court on the basis that the order is "not supported by substantial evidence, is arbitrary and capricious, is not supported by the great and overwhelming weight of the evidence and is not supported by law." For the reasons set forth below, we reverse and remand.

## STANDARD OF REVIEW

¶15. Our standard of review "in actions arising under Workers' Compensation Law . . . is limited to a determination of whether the [Commission] erred as a matter of law or made factual findings of fact contrary to the overwhelming weight of the evidence." *Clements v. Welling Truck Serv. Inc.*, 739 So. 2d 476, 478 (¶7) (Miss. Ct. App. 1999) (citing *Fought v. Stuart C. Irby Co.*, 523 So. 2d 314, 317 (Miss. 1988)). "Reversal is proper only when a Commission order is not based on substantial evidence, is arbitrary or capricious, or is based on an erroneous application of the law." *Weatherspoon v. Croft Metals Inc.*, 853 So. 2d 776, 778 (¶6) (Miss. 2003). Our supreme court has also stated the Commission will only be reversed "for an error of law or an unsupportable finding of fact." *Ga. Pac. Corp. v. Taplin*, 586 So. 2d 823, 826 (Miss. 1991) (internal citations omitted). When the Commission's

7

decision is supported by substantial evidence, then it must be upheld. *Vance v. Twin River Homes Inc.*, 641 So. 2d 1176, 1180 (Miss. 1994). This remains true even though we might have reached a different conclusion were we the trier of fact. *Id.*

**DISCUSSION**

¶16. Mississippi Code Annotated section 71-3-53 creates a one-year limitations period for a claimant who seeks additional benefits related to her claim:

> Upon its own initiative or upon the application of any party in interest on the ground of a change in conditions or because of a mistake in a determination of fact, the commission may, at any time prior to one (1) year after date of the last payment of compensation, whether or not a compensation order has been issued, or at any time prior to one (1) year after the rejection of a claim, review a compensation case, issue a new compensation order which may terminate, continue, reinstate, increase, or decrease such compensation, or award compensation. . . .

This case is unusual because Cleveland is not requesting additional benefits on her previously filed claims; she is merely requesting the Commission enforce its prior orders and make her Employer/Carrier pay the bills it had already agreed to pay. Assuming, however, that Cleveland was obligated to seek relief within one year of the filing of the Form B-31, we conclude that the Employer/Carrier is estopped from asserting the statute-of-limitations defense because it knew of and previously agreed to pay Cleveland's outstanding bills, leading Cleveland to believe they would be paid, and because the Employer/Carrier represented to the AJ that it was processing one bill and had paid the other bill. Furthermore, we hold that Cleveland's contact and notice to the Employer/Carrier of the outstanding bills tolled any statutory limitations period that may be applicable.

8

**I.    The Employer/Carrier is estopped from asserting the statute-of-limitations as a defense.**

¶17.    An employer can be estopped from raising a statute-of-limitations defense if an employee can show he was misled into believing that his employer would pay his medical expenses. This principle was articulated in *Baker v. IGA Super Valu Food Store*, 990 So. 2d 254, 257 (¶4) (Miss. Ct. App. 2008). In that workers' compensation case, the claimant failed to file his petition to controvert within two years of his injury, and the AJ dismissed the claim on the ground of that statute-of-limitations.[6]  *Id*. at (¶3). Baker argued that the employer should be estopped from asserting the statute-of-limitations as a defense because the employer voluntarily paid his medical bills without question or controversy, and Baker reasonably relied on such payment. *Id*. at 260 (¶22). This Court held that "[a]n employer may be estopped from asserting the statute-of-limitations as a bar to a claim for benefits where the evidence shows that the employer intended to mislead the claimant, and the employee reasonably relied on such statements or actions."[7]  *Id*. at 261 (¶23). This principle

---

[6] Mississippi Code Annotated section 71-3-35(1) (Rev. 2011), which addresses the right to compensation, provides in pertinent part as follows:

> [I]f no payment of compensation (other than medical treatment or burial expense) is made and no application for benefits filed with the commission within two years from the date of the injury or death, the right to compensation therefore shall be barred.

[7] The dissenting portion of the separate opinion cites the elements of equitable estoppel found in *Chance v. Chance*, 191 So. 3d 1293, 1299 (¶21) (Miss. Ct. App. 2016), a domestic relations case. There is no dispute that the elements required to establish equitable estoppel (i.e., "inequitable behavior") are "(1) belief and reliance on some representation ; . . . (2) change of position as a result of the representation; and (3) detriment or prejudice caused by the change of position." *Id*. at 1297 (¶13). Here, Cleveland has sufficiently proved these elements. The Employer/Carrier represented to Cleveland in the

9

was reiterated in *McKinney v. University of Mississippi Medical Center*, 110 So. 3d 332, 334 (¶10) (Miss. Ct. App. 2013). To support his argument for estoppel, the employee must provide evidence of "inequitable behavior" by the employer. *Id*. Although Baker and McKinney did not prevail because they could not show inequitable behavior, both cases still constitute precedent for situations where a claimant such as Cleveland can. *Id*. at 334 (¶11); *Baker*, 990 So. 2d at 261 (¶25).

¶18. There is ample evidence in this record to show the Employer/Carrier's "inequitable behavior." The Employer/Carrier had notice of both the Allreds' Pharmacy bill and the physical therapy bills before the Form B-31 was filed. The Employer/Carrier never disputed the bills, leading Cleveland to believe they would be paid. The Employer/Carrier exemplified "inequitable behavior" when it failed to pay Cleveland's medical bills that it had agreed to pay pursuant to the settlement agreement. Further, it ignored Cleveland's email and letter, which were sent within the one-year statute-of-limitations period, reminding them to pay the outstanding bills.[8] Further, the Employer/Carrier willfully represented to the AJ

---

settlement documents that it "has paid or will pay" all her outstanding medical bills. Cleveland reasonably relied on this representation by sending them reminders of their agreement instead of immediately taking formal legal action. This change in her position while relying on the Employer/Carrier's representation ultimately acted to her detriment.

[8] The dissenting portion of the separate opinion cites *Turnage v. Lally's Swimming Pool Company*, 247 Miss. 713, 159 So. 2d 84 (1963), which is inapplicable to the facts before us. In *Turnage*, the carrier paid all of Turnage's hospital and accrued medical expenses that he incurred prior to the filing of the Form B-31. *Turnage*, 247 Miss. at 84, 159 So. 2d at 716. But Turnage sought payment for additional medical treatment thereafter. *Id*. Here, the Employer/Carrier had unequivocally agreed to pay Cleveland's medical bills that were incurred prior to the filing of the Form B-31 but had failed to do so. Cleveland was simply seeking enforcement of the payment of a bill that the Commission had approved and the Employer/Carrier had agreed to pay.

10

that it had paid one of the outstanding bills and that it was processing the other. Instead of doing so, the Employer/Carrier appealed the AJ's decision. We cannot condone any misrepresentations made to a judicial officer. Because of the foregoing, the Employer/Carrier is estopped from asserting the statute-of-limitations defense.

**II.      Cleveland's contacts with the Employer/Carrier during the one year following the filing of the B-31 notice tolls any applicable statutory limitations period.**

¶19.    In this case, the Form B-31 notice indicating that the parties had reached a settlement on the payment of any compensation due was filed on September 12, 2016.[9] But the proper filing of the Form B-31 starts the one-year statute-of-limitations period, which can be tolled. The dissenting portion of the separate opinion points out that the Employer/Carrier's payment of the Medicomp medical bill after the one-year limitations period had passed did not toll the limitations period. But this Court does not hold that it did. We hold that the correspondence that was sent to the Employer/Carrier, which had agreed before the B-31 was filed to pay outstanding medical bills, was sufficient to toll the limitations period.

¶20.    Section 71-3-53 provides that "the commission may, at any time prior to one (1) year after date of the last payment of compensation . . . or . . . after the rejection of a claim, review

_____

[9] Cleveland contends that the Form B-31 was not properly filed because at the time of its filing, the Employer/Carrier still had not paid medical bills that it agreed to pay in the settlement agreement. We disagree with this contention. A review of the record supports a finding that the Form B-31 was properly filed in accordance with section 71-3-53 and Mississippi Workers' Compensation Commission Procedural Rule 2.17 (the 2018 replacement of Procedural Rule 17). The form contained Cleveland's signature, showing that Cleveland had been put on notice of the one year as it related to future claims. As noted earlier, it is questionable whether this one-year statute-of-limitation applies in this case because the claims in dispute are not future claims, but a claim for bills that the Employer/Carrier already agreed to pay as a part of the settlement agreement.

11

a compensation case, issue a new compensation order which may terminate, continue, reinstate, increase, or decrease such compensation, or award compensation." The one-year limitations period imposed by section 71-3-53 "operates elsewhere in conjunction with § 71-3-37(7), the Mississippi Workers' Compensation Commission's Procedural Rule 17[10], and the Commission's form B-31." *Taylor v. Salvation Army-Pascagoula Corps.*, 744 So. 2d 825, 827 (¶6) (Miss. Ct. App. 1999). In other words, in order to determine if the one-year statute-of-limitations period has run, we must look at the statute, the procedural rule, and the B-31 form together.

¶21. The Form B-31 includes the specific language that "[i]f you incur . . . additional expenses, due to your injury, you should immediately contact **your employer, the insurance carrier,** *or* **the Mississippi Workmen's Compensation Commission for further guidance**." (Emphasis added). The Form B-31 lists three entities in the disjunctive to inform a claimant whom he or she should contact. By including that specific language, the form leads a claimant to believe that contacting any of these entities would be sufficient to toll the one-year period. Therefore, the form is clearly ambiguous.[11]

¶22. Moreover, the Commission itself has indicated that contacting the employer could toll the limitations period. In a previous case before the Commission, the Employer/Carrier

---

[10] Again, Rule 17 was replaced by Rule 2.17 on January 1, 2018.

[11] Further, Cleveland did not incur an "additional expense." Cleveland was simply seeking payment of medical bills that they previously agreed upon, which the Commission approved, and the Employer/Carrier represented to the AJ that it would pay. For an Employer/Carrier to delay payment until after the one-year statute-of-limitations from the filing of the Form B-31 to avoid its obligations is behavior that should not be condoned.

argued that the claimant's claim was barred by the one-year limitations period provided in section 71-3-53. *Smith v. Express Jet Airlines and N. H. Ins. Co.*, 2013 WL 1090000, No. 1106052-M-1580-C (M.W.C.C. March 7, 2013). The Commission denied the claim on the following basis:

> The claimant took no action that would toll the one year allowed for reopening a claim under the Mississippi Workers Compensation Law. Specifically, the claimant failed to file an application for additional benefits with the Commission, and **she made no contacts with the employer/carrier in an effort to seek benefits.**

*Id.* (emphasis added). The Commission's own language in the *Smith* order leads a claimant to believe that if he or she contacts the Employer/Carrier, then the Commission will reach a different result.

¶23. Here, the Employer/Carrier received notice of the unpaid medical bills twice before the Form B-31 was filed. The Employer/Carrier was notified when Cleveland responded to the Employer/Carrier's first set of requests for production of documents and again when Cleveland filed a pre-hearing statement with the Commission and attached an itemization of her medical expenses. The Employer/Carrier settled with Cleveland and agreed to pay the medical bill that is in dispute.

¶24. After the filing of the Form B-31, the record shows, and the Employer/Carrier acknowledged in its brief, that Cleveland contacted the Employer/Carrier on two occasions within one year. First, on November 30, 2016, two months after the Form B-31 was filed, Cleveland's attorney sent an email to the Employer/Carrier's attorney requesting payment on an outstanding bill from Allreds' Pharmacy. Second, Cleveland's attorney then sent a letter

13

to the Employer/Carrier on July 13, 2017, again requesting payment for the Allreds' Pharmacy and the Medicomp physical therapy bills. Based upon the agreement between the parties that the bills would be paid, the ambiguity of the Form B-31, and the fact that the Commission encourages contacting the employer based upon the *Smith* order, we find that Cleveland's actions sufficiently tolled the one-year statute-of-limitations period.

## CONCLUSION

¶25. For the foregoing reasons, the Commission erred in holding that it lacked jurisdiction to consider Cleveland's motion. We reverse the Commission's decision and remand this case for further proceedings consistent with this opinion.

¶26. **REVERSED AND REMANDED.**

**GREENLEE, WESTBROOKS, LAWRENCE AND McCARTY, JJ., CONCUR. TINDELL, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION. BARNES, C.J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION, JOINED BY CARLTON AND J. WILSON, P.JJ., AND C. WILSON, J.**

**BARNES, C.J., CONCURRING IN PART AND DISSENTING IN PART:**

¶27. While I concur with the majority's finding that the Form B-31 was properly filed, I respectfully dissent from its holding that the one-year statute of limitations was tolled and that the "Employer/Carrier" was estopped from raising a statute-of-limitations defense.

¶28. I find Cleveland's argument—that the filing of the B-31 did not trigger the running of the one-year limitations period because the Employer/Carrier knew it was obliged to pay those medical expenses incurred before the settlement order—unpersuasive. The treatise Cleveland cites, Bradley & Thompson, *Mississippi Workers' Compensation Law* § 7:23

14

(2019), provides:

> The proper filing of the B-31 triggers the running of the one-year period of [section] 71-3-53. Failure to file the B-31 at all, failure to file a new B-31 when needed, and failure to file the B-31 properly all have resulted in claims not being barred even though filed more than one year after a "last payment."
>
> . . . .
>
> 1. Good faith belief that obligation has ended. When a B-31 is filed with the commission, it is like other representations filed by the employer or claimant in that it must be made in good faith and with an honest, substantiated belief that it is true. In this case, the employer must have such a basis for its representation that its obligation is at an end. In *Hale v. General Box Manufacturing Co.*, [228 Miss. 394, 401, 87 So. 2d 679, 680 (1956),] when the employer filed a B-31 on January 20, 1954, at a time when it "did not consider the payment made in December 1952 as a final payment," the B-31 did not set the one-year period in motion. The reason for such a requirement is obvious. Nothing less than the claimant's statutory rights are on the line, not to mention the right to due process of law. . . .
>
> 2. If a B-31 is filed at a time the employer-carrier knows or should know of a continuing need for medical services, for example, that B-31 should not be effective to trigger the running of the one year. In *Hale*, the court disregarded it.

However, the facts in *Hale* are distinguishable from the present case. In *Hale*, the insurance carrier filed an *unsigned* Form B-31 with the Commission and *did not inform* the claimant that was the final payment; only that his payments had been suspended. *Hale*, 228 Miss. at 401, 87 So. 2d at 680. Here, Cleveland signed the B-31 form, acknowledging receipt of the final payment of compensation. The form explicitly stated that the Employer had determined there were no more payments to be made; so Cleveland was aware that this was the final payment. "The Commission Rule 2.17 (2018 replacement of Procedural Rule 17) says that if the worker signs the completed B-31, its filing is effective upon its delivery to the

15

commission. The one-year period begins at that time." Bradley & Thompson, *Mississippi Workers' Compensation Law* § 7:23 (2019). Therefore, Cleveland had until September 13, 2017, to notify the Commission of any additional medical benefits to be paid.[12]

¶29. The majority finds that Cleveland's actions in contacting the Employer/Carrier on two occasions within the one year "sufficiently tolled the one-year statute-of-limitations period." *Supra* ¶24. The only case cited by the majority to support its holding—that a claimant may toll the statute of limitations by sending an email or letter to the employer within a year after the Form B-31 has been filed—is *Smith v. Express Jet Airlines and New Hampshire Insurance Co.*, 2013 WL 1090000, No. 11 06052-M-1580-C (M.W.C.C. March 7, 2013). In *Smith*, the carrier sent a Form B-31 to the claimant, who never responded or signed the form; so two months later, the carrier filed the form with the Commission. *Id*. at *1. More than one year later, after the statute of limitations had run, she filed a petition to controvert. *Id*. The Commission found her claim barred, holding:

> The claimant took no action that would toll the one year allowed for reopening a claim under the Mississippi Workers' Compensation Law. Specifically, the claimant failed to file an application for additional benefits with the Commission, *and she made no contacts with the employer/carrier in an effort to seek benefits*.

*Id*. at *2 (emphasis added). I cannot see that this dicta is sufficient authority to reopen the

_____

[12] Also, the claimant in *Hale* filed a letter with the Commission less than one month after the unsigned Form B-31 was filed, asserting that no compensation had been paid for over a year. *Hale*, 228 Miss. at 400, 87 So. 2d at 679-80. This letter was within the one-year statute of limitations. Here, although Cleveland notified the Employer/Carrier of the outstanding medical expenses after signing the form, she did not file anything (e.g., a letter or a petition) with the Commission until six months after the one-year statute of limitations had expired.

statute of limitations in the instant case, especially since Cleveland signed the Form B-31 whereas the claimant in *Smith* did not.

¶30.    Under Mississippi law, a Form B-31 "constitutes notice to [a] claimant that he is receiving his final payment of compensation . . . and that the employer and insurance carrier consider the case closed." *Armstrong Tire & Rubber Co. v. Franks*, 242 Miss. 792, 797, 137 So. 2d 141, 143 (Miss. 1962).  Thus, the one-year limitations period established by section 71-3-53 is measured by the claimant's execution and the employer's filing of a Form B-31. In *Hancock v Mississippi Forestry Commission*, 878 So. 2d 1058, 1059 (¶3) (Miss. Ct. App. 2004), an employer filed a completed Form B-31 in 1995 with the Commission, which the injured employee had signed.  In 2002, the employee attempted to obtain additional benefits related to his original injury, filing a petition with the Commission.  *Id*. at (¶5).  The AJ found the claim procedurally barred by the statute of limitations.  *Id*. at (¶1).  On appeal, we affirmed:

> This Court has held that in order to prevent a claim from becoming time-barred, the injured worker may request and enforce payment of medical benefits within the one year period. *Barr v. Conoco Chems., Inc.*, 412 So. 2d 1193, 1196 (Miss. 1982).  There is no evidence of Hancock's attempting to re-open his claim between November of 1995 and May of 2002 when he filed a petition to controvert. . . . *Whether or not Hancock knew the implications of the B-31 form he signed, he is still bound by the statute of limitations it creates*.

*Id*. at 1060-61 (¶9) (emphasis added).  When Cleveland signed the B-31 form in 2016, acknowledging final payment, she was aware of outstanding bills.  Yet, she made no attempt to re-open her claim with the Commission until six months after the one-year statute of limitations had run.  As in *Hancock*, Cleveland was "still bound by the statute of limitations"

17

created by the Form B-31 she had signed.

¶31. The majority also finds that the Employer/Carrier should be estopped from asserting the statute-of-limitations defense due to its "inequitable behavior." Cleveland did not raise this issue on appeal, and I find no evidence of "inequitable behavior" in this instance to warrant estoppel, nor any change in position by Cleveland in reliance on any alleged representation by the Employer/Carrier. *See Chance v. Chance*, 191 So. 3d 1293, 1299 (¶21) (Miss. Ct. App. 2016) (Equitable estoppel "requires proof of a (1) belief and reliance on some representation; (2) change of position as a result of the representation; and (3) detriment or prejudice caused by the change of position."). Although the Employer/Carrier did pay Cleveland medical benefits in April 2018 and indicate to the AJ that it was working with the adjuster to process those payments, these actions cannot constitute estoppel as they occurred after the statute of limitations had run. The Mississippi Supreme Court has held:

> Once the claim has been barred by the passage of time, it will not be revived and a new period will not be set in motion by the furnishing of an isolated bit of medical service years after the injury. The objective of the statute being to protect the claimant who reasonably refrains from making claim because of the receipt of benefits voluntarily supplied, no claimant can allege that his failure to make timely application was excused by something that happened after the claim was already barred.

*Turnage v. Lally's Swimming Pool Co.*, 247 Miss. 713, 717, 159 So. 2d 84, 85 (1963).

¶32. Accordingly, I would affirm the Commission's decision.

**CARLTON AND J. WILSON, P.JJ., AND C. WILSON, J., JOIN THIS OPINION.**

18